**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

BRANDON BARELA,

      Petitioner,

v.                                         Civ. 15-431 JCH/KK

JEFF WRIGLEY *et al.*,

      Respondents.

**MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") (Doc. 1), filed May 21, 2015. Having meticulously reviewed the pleadings and the record before the Court, the undersigned finds Petitioner's claims to be without merit. The undersigned therefore recommends that the Court DISMISS the Petition WITH PREJUDICE.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 17, 2009, a jury found Petitioner Brandon Barela guilty of first-degree murder, kidnapping, armed robbery, and two counts of tampering with evidence, in Cause Number D-905-CR-2009-230 in the Curry County District Court for the State of New Mexico. (Doc. 6-1 at 1-3; Doc. 6-2 at 57-58; Doc. 6-4 at 61-62.) On May 13, 2010, the state district court sentenced Petitioner to a total term of imprisonment of life plus 18 years for these crimes.[1] (Doc. 6-1 at 2.)

---

[1] Specifically, the court sentenced Petitioner to: (a) life imprisonment for first-degree murder; (b) 18 years' imprisonment for kidnapping; (c) 9 years' imprisonment for armed robbery; and, 3 years' imprisonment for each count of tampering with evidence. (Doc. 6-1 at 2.) The court ordered the terms of imprisonment for murder and kidnapping to run consecutively, and the remaining terms of imprisonment to run concurrently with the term of imprisonment for kidnapping. (*Id.*)

Petitioner's convictions arose out of the killing of Ron Hittson in the early morning hours of April 2, 2009.  (Doc. 6-1 at 12-26; Doc. 6-2 at 59-63.)  As described by the New Mexico Supreme Court in affirming Petitioner's convictions on direct appeal, the facts underlying the convictions are as follows.  Petitioner, Manual Vargas, Jose Rodriguez, and Lazaro Soto worked for a dairy testing company in Roswell, New Mexico.  (Doc. 6-2 at 59.)  On April 1, 2009, the four men drove a company truck to Clovis, New Mexico to test milk at local dairies.  (*Id.*; Doc. 6-1 at 12.)  After finishing their work for the day, they had dinner and "shared four pitchers of beer" at a local Pizza Hut.  (Doc. 6-2 at 59.)  They also "purchased beer from a gas station," and then checked into a hotel.  (*Id.*)  Petitioner, Mr. Vargas, and Mr. Soto next proceeded to a bar called Webb's Watering Hole "to drink," where they met Mr. Hittson.  (*Id.*)  When that bar closed, Mr. Vargas dropped Mr. Soto off at the hotel, and drove Petitioner and Mr. Hittson to the City Limits Bar, "where the three men continued to drink."  (*Id.* at 60.)  They left this bar when the owner ejected them for smoking marijuana in the restroom.  (*Id.*)

Petitioner was driving Mr. Hittson back to his vehicle at Webb's Watering Hole, when Mr. Hittson said he "wanted to keep partying and inquired as to whether the other men knew where he could get some marijuana and cocaine."  (*Id.*)  Petitioner asked Mr. Hittson "if he had any money," and Mr. Hittson "showed [Petitioner] that he had approximately $400 in cash."  (*Id.*)  Petitioner

> then pulled out his cell phone, pretended to place a few calls looking for drugs, and drove in the direction of the dairies.  [Mr.] Vargas sensed something was amiss and told [Petitioner] he wanted to call it a night.  [Petitioner] said "no" and told [Mr.] Vargas that he wanted to "score some."  [Petitioner] again pretended to place calls looking for drugs and quoted [Mr. Hittson] a price for "the score."

(*Id.*)  When Mr. Hittson complained that the quoted price was too high, he and Petitioner "exchanged words," and Mr. Hittson told Petitioner "to stop the truck, and that he would walk

back to 'his rig.'"  (*Id.* at 60-61.)  Petitioner stopped the truck, and Mr. Hittson got out and "began walking towards town."  (*Id.* at 61.)

As Mr. Hittson walked away, Petitioner said to Mr. Vargas, "let's get him . . . I'm gonna get him."  (*Id.*)  Mr. Vargas witnessed Petitioner get out of the truck, retrieve something from the back of it, and proceed toward Mr. Hittson.  (*Id.*)  Mr. Vargas drove the truck in the direction of Petitioner and Mr. Hittson, and exited it in time to witness Petitioner hit Mr. Hittson "over the head approximately four times with a cinder block."  (*Id.*)  When Mr. Vargas tried to stop Petitioner, Petitioner "hit [Mr.] Vargas in the face, and told him that he knew what he was doing, '[i]t's not like [he'd] never done this before, [and that he] need[ed] to do it.'"  (*Id.*)  Petitioner took Mr. Hittson's wallet from his person either immediately before or after assaulting him.  (*Id.* at 104.)  Petitioner then followed Mr. Vargas back to the truck, tossing the cinder block in the back.  (*Id.* at 61.)

Mr. Vargas drove Petitioner to their hotel, where Petitioner woke Mr. Rodriguez and "told him he needed help getting rid of a body."  (*Id.* at 61-62.)  When Mr. Rodriguez refused to get involved, Petitioner woke Mr. Soto and told him he needed help; he also called A.J. Perales, and asked him to drive Petitioner's personal vehicle to Clovis.  (*Id.* at 62.)  He then told Mr. Vargas they needed to "go back and make sure [Mr. Hittson] was dead."  (*Id.*)  Mr. Vargas dropped Petitioner off near where they had left Mr. Hittson's body, drove a bit further, turned around, and returned to retrieve Petitioner.  (*Id.*)  Petitioner "jumped into the truck, tossed a crowbar onto the middle of the front seat[,] and told [Mr.] Vargas to clean the crowbar off and put it back where it belonged."  (*Id.*)  Petitioner and Mr. Vargas then returned to the hotel.  (*Id.*)

Later that morning, Petitioner drove Mr. Vargas, Mr. Soto, and Mr. Rodriguez to a job site, where Mr. Perales met them with Petitioner's personal vehicle.  (*Id.*)  While at the job site,

Petitioner's co-workers saw him "with a bucket, chemical bleach, and the clothes he was wearing the night before.  Curry County police later found a large trash bin with jeans, boots, and a sweatshirt that had been bleached."  (*Id.* at 106.)  Petitioner and Mr. Soto left the job site early and drove back to Roswell in Petitioner's vehicle.  (*Id.* at 62.)  During the drive, Petitioner told Mr. Soto to get rid of Mr. Hittson's wallet.  (*Id.* at 106.)  Mr. Hittson's body was found without identification.  (*Id.* at 63.)  Police determined that he had "suffered a minimum of four 'high energy injuries' to his head and face and a postmortem injury to his chest."  (*Id.*)  His "body had no defensive wounds."  (*Id.*)

Petitioner appealed his convictions directly to the New Mexico Supreme Court on June 14, 2010.[2]  (Doc. 6-1 at 4; Doc. 6-4 at 62.)  Petitioner's appellate pleadings included the additional details that:  (a) the beer purchased from a gas station on April 1, 2009 was "an eighteen pack," of which "they" drank "some" or "a few," (Doc. 6-1 at 12, 43, 50); (b) "[t]hey drank "more alcohol" at Webb's Watering Hole, and Petitioner and Mr. Hittson "drank more beer" at the City Limits Bar, (*id.* at 44-45); (c) according to the Webb's Watering Hole bartender, Petitioner "did not appear too intoxicated when he first arrived at the bar," (*id* at 18, 50); (d) according to the City Limits bartender, Petitioner and "three other individuals" were "drinking Bud Light," and she did not believe they were "too intoxicated to serve," (*id.* at 19, 49); (e) Petitioner and his fellow employees finished work at about 5:00 p.m. on April 1, 2009, (*id.* at 19); (f) Petitioner, Mr. Vargas, and Mr. Hittson left the City Limits Bar at about 12:45 a.m. on April 2, 2009, (*id.* at 19, 49-50); (g) Petitioner and Mr. Vargas returned to the hotel about five minutes after one o'clock that morning, (*id.* at 47); and, (h) Mr. Rodriguez testified that Petitioner was "desperate and drunk" when Petitioner woke him shortly thereafter.  (*Id.* at 18,

---

[2] The New Mexico Supreme Court "exercises appellate jurisdiction where life imprisonment has been imposed." (Doc. 6-2 at 58 (citing N.M. Const. art. VI, § 2 *and* N.M. R. App. P. 12-102(A)(1)).)

49.)  On appeal, Petitioner raised a number of arguments, including that insufficient evidence supported his first-degree murder and kidnapping convictions.  (*Id.* at 67-69.)

On March 28, 2013, the New Mexico Supreme Court affirmed Petitioner's convictions in a 52-page decision.  (Doc. 6-2 at 57-109.)  *Inter alia*, the court held that there was "sufficient evidence to find that [Petitioner] deliberated before killing [Mr. Hittson]," and "substantial evidence to support [Petitioner's] first-degree murder conviction."  (*Id.* at 100.)  The court also held that sufficient evidence supported Petitioner's kidnapping conviction.  (*Id.* at 100-02.) Specifically, the court found that

> the evidence was sufficient to allow a reasonable jury to infer that [Petitioner] committed kidnapping by deception when [Petitioner] talked to [Mr. Hittson] about scoring drugs, pretended to make numerous phone calls leading [Mr. Hittson] to believe he was trying to set up a drug deal, allowed [Mr. Hittson] to believe they were heading to the dairies to "score" some drugs, and proceeded to quote [Mr. Hittson] a price for the fake drug deal.

(*Id.* at 101-02.)

Petitioner, through his current counsel, filed a petition for writ of habeas corpus in state district court on June 12, 2014, requesting an evidentiary hearing.  (Doc. 6-3 at 1; Doc. 6-4 at 61.)  In his state habeas petition, Petitioner asserted three grounds for relief.  (Doc. 6-3 at 5.) First, Petitioner claimed that his trial counsel provided him with ineffective assistance in violation of the New Mexico and United States Constitutions by failing "to introduce the opinion testimony of an expert on intoxication to negate the intent element of first-degree, willful and deliberate murder."  (*Id.*)  Second, Petitioner claimed that he was denied due process of law in violation of the New Mexico and United States Constitutions "when he w[as] convicted of kidnapping on the basis of facts that do not constitute kidnapping."  (*Id.*)  Finally, Petitioner claimed that his armed robbery conviction "offend[ed] due process and the protection against double jeopardy."  (*Id.*)

The state district judge who presided over Petitioner's trial and sentencing dismissed Petitioner's state habeas petition without an evidentiary hearing on February 13, 2015.  (*Id.* at 20-25; Doc. 6-4 at 61.)  In its order, the court first considered Petitioner's claim "that trial counsel erred by not calling an expert witness to provide testimony related to the Petitioner's level of intoxication," in violation of the Sixth Amendment to the United States Constitution and/or Article II, Section 14 of the New Mexico Constitution.  (Doc. 6-3 at 21.)  As to this claim, the court held that

> [d]efense [c]ounsel's decisions as to what witnesses to call, and what defense to present, were trial tactics and [c]ounsel is afforded wide latitude as he represented the Petitioner.  Petitioner has failed to show that, but for counsel's "error," there is a reasonable probability that the result of the conviction proceedings would have been different.  This Court finds that Petitioner's allegation of ineffective assistance of counsel is not supported by facts and that, as presented in his Writ for Habeas Corpus, the Petitioner cannot show conduct which was not that of a reasonable, competent attorney.  This Court is of the opinion that no prejudice to the Petitioner occurred in this regard.

(*Id.* at 21-22.)

The state court also rejected Petitioner's claim that his kidnapping conviction "violate[d] due process under the Fourteenth Amendment to the United States Constitution and/or under Article II, Section 18 of the New Mexico Constitution."  (*Id.* at 22.)  The court determined that "the facts upon which Petitioner was convicted for kidnapping, in this matter, are sufficient," and "the ruling in [*New Mexico v.*] *Trujillo*[, 2012-NMCA-112, 289 P.3d 238,] does not affect his conviction."  (*Id.*)  According to the court's reasoning, *Trujillo* held that "the Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime."  (*Id.*)  Petitioner's conviction, however, "was based upon sufficient facts and was not incidental to another crime."  (*Id.*)  In support of this conclusion, the court cited to the New Mexico Supreme Court's determination on direct appeal that sufficient evidence was presented to support a

conviction of kidnapping by deception, specifically, evidence that Petitioner pretended to set up a drug deal for Mr. Hittson, and changed their destination from Mr. Hittson's vehicle to the dairies on the pretext of scoring drugs.  (*Id.*)  The state district court concluded that "[a]fter examining the Court record . . . Petitioner is not entitled to relief as a matter of law."[3]  (*Id.* at 25.)

On or about April 15, 2015, Petitioner filed a petition for writ of certiorari, (*id.* at 26-27), which the New Mexico Supreme Court denied on May 7, 2015.  (Doc. 6-4 at 60.)  Petitioner filed the Petition now pending before this Court on May 21, 2015.  (Doc. 1.)  Respondents answered the Petition on June 26, 2015, conceding that the Petition is timely and that Petitioner has exhausted state court remedies, but arguing that his claims are substantively without merit and subject to summary dismissal.  (Doc. 6.)  Petitioner filed a reply in support of the Petition on October 2, 2015.  (Doc. 12.)  United States District Judge Judith C. Herrera referred this matter to the undersigned on June 2, 2015, and the Petition is now before the undersigned for proposed findings and a recommended disposition.  (Doc. 4.)

## II.    PETITIONER'S CLAIMS

In his Petition, Petitioner has raised and exhausted two grounds for relief.  Specifically, Petitioner claims that:  (1) his trial counsel provided him with ineffective assistance in violation of the Sixth Amendment to the United States Constitution, by failing "to introduce at trial opinion testimony . . . of an expert in intoxication to negate the element of intent for first-degree willful and deliberate murder," (Doc. 1 at 7); and, (2) insufficient evidence supported his kidnapping conviction pursuant to *New Mexico v. Trujillo*, 2012-NMCA-112, 289 P.3d 238,[4] and

---

[3] The state district court also rejected Petitioner's habeas challenges to his armed robbery and tampering with evidence convictions.  (*Id.* at 23-24.)  Petitioner omitted these challenges from his federal habeas petition, (*see generally* Doc. 1), and thus the Court will not consider them here.

[4] In his Petition, Petitioner states that *Trujillo* is a New Mexico Supreme Court decision.  (Doc. 1 at 10.)  In fact, *Trujillo* is a New Mexico Court of Appeals decision, which the New Mexico Supreme Court "let . . . stand as

the conviction therefore violated the due process clause of the Fourteenth Amendment to the United States Constitution.  (Doc. 1 at 10-12.)

## III.  STANDARD OF REVIEW

Under 28 U.S.C. § 2254, a federal court may only grant a state prisoner's petition for a writ of habeas corpus where the prisoner is held "in violation of the Constitution or laws or treaties of the United States," and has, with certain exceptions not relevant here, exhausted state court remedies.  28 U.S.C. § 2254(a)-(c).  Pursuant to Section 2254(d), when the prisoner's claims have been adjudicated on the merits in state court, such a petition can only be granted if the state court's decision was contrary to, or unreasonably applied, "clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state court decision "unreasonably applies" clearly established federal law if it "correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case."  *Id.* "Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but [also] objectively unreasonable."  *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *see also Bell*, 535 U.S. at 694 ("[A]n unreasonable application is different from an incorrect one.").  "Evaluating whether a rule application was unreasonable requires considering

---

precedent by [its] order quashing certiorari."  *New Mexico v. Marquez*, 2015 WL 1291651, at *2 (N.M. Mar. 23, 2015).

the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Welch v. Workman*, 639 F.3d 980, 1010 (10th Cir. 2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  The state court need not cite to United States Supreme Court cases, or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Indeed, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning" at all.  *Harrington*, 562 U.S. at 98; *see also Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) ("Section 2254(d) applies even where there has been a summary denial."); *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) ("[W]e owe deference to the state court's *result*, even if its reasoning is not expressly stated.") (emphasis in original).

Review under Section 2254(d) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181, 185 n.7; *Black v. Workman*, 682 F.3d 880, 895 (10th Cir. 2012).  Such review must be "highly deferential." *Cullen*, 563 U.S. at 181; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  "The petitioner carries the burden of proof." *Cullen*, 563 U.S. at 181.

> [E]ven a strong case for relief does not mean the state court's contrary conclusion
> was unreasonable.  If this standard is difficult to meet, that is because it was
> meant to be. . . .  [Section] 2254(d) stops short of imposing a complete bar on
> federal-court relitigation of claims already rejected in state proceedings.  It
> preserves authority to issue the writ in cases where there is no possibility
> fairminded jurists could disagree that the state court's decision conflicts with this
> Court's precedents.  It goes no further.  Section 2254(d) reflects the view that

> habeas corpus is a guard against extreme malfunctions in the state criminal justice
> systems, not a substitute for ordinary error correction through appeal.

*Harrington*, 562 U.S. at 102-03 (citations and internal quotation marks omitted).

In Section 2254 proceedings, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."[5] 28 U.S.C. § 2254(e)(1); *Welch*, 639 F.3d at 991 ("We presume the factual findings of the state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence."). A petitioner is "entitled to an evidentiary hearing so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." *Anderson v. Attorney General of Kan.*, 425 F.3d 853, 858 (10th Cir. 2005) (citation and internal quotation marks omitted). However, factual allegations must be "specific and particularized, not general or conclusory." *Id.* at 858-59. "Moreover, an evidentiary hearing is unnecessary if the claim can be resolved on the record." *Id.* at 859.

> [B]ecause the deferential standards prescribed by § 2254 control whether to grant
> habeas relief, a federal court must take into account those standards in deciding
> whether an evidentiary hearing is appropriate. In practical effect . . . this means
> that when the state-court record precludes habeas relief under the limitations of §
> 2254(d), a district court is not required to hold an evidentiary hearing.

*Cullen*, 563 U.S. at 183 (citations and internal quotation marks omitted). The Court will consider the instant Petition in light of the foregoing standards.

---

[5] Petitioner argues that the state district court's factual findings in this case are not entitled to a presumption of correctness because the court denied his petition without holding an evidentiary hearing. (Doc. 12 at 2.) However, state court factual findings are entitled to a presumption of correctness as long as the state court examined the claim on the merits, including any proffered non-record evidence. *Lott v. Trammell*, 705 F.3d 1167, 1213 (10th Cir. 2013). Here, the state district court clearly examined Petitioner's claims on the merits; and, Petitioner did not proffer any non-record evidence, or even any specific factual allegations about non-record evidence, in support of his claims. In addition, the judge who denied Petitioner's petition also presided over his criminal trial, and therefore actually observed both trial counsel's performance and the sufficiency of the evidence.

**IV.   ANALYSIS**

    **A.   The state courts reasonably determined that Petitioner received effective assistance of counsel.**

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984).  For a defendant to succeed on a claim of ineffective assistance of counsel, he must demonstrate both that "counsel's representation fell below an objective standard of reasonableness," and that "the deficient performance prejudiced the defense."  *Id.* at 687-88.  In applying the *Strickland* test, courts "may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one."  *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).  The *Strickland* test is clearly established federal law within the meaning of Section 2254(d).  *Cullen*, 563 U.S. at 189.  However, "*Strickland* created a general standard, thus giving a state court . . . more latitude to reasonably determine that a defendant has not satisfied that standard."  *Welch*, 639 F.3d at 1010 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

    Regarding the first *Strickland* prong,

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Strickland*, 466 U.S. at 689.   A court's review of counsel's performance is "highly deferential," *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011); and, a defendant must overcome the "strong presumption" that his counsel "made all significant decisions in the exercise of reasonable professional judgment" and "counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689-90.  This Court is required not only to give trial counsel "the benefit of the doubt," but also to "affirmatively entertain the range

of possible reasons [trial] counsel may have had for proceeding as [he] did." *Cullen*, 563 U.S. at 196 (citation and internal quotation marks omitted). "It is rare that constitutionally competent representation will require any one technique or approach." *Id.* (citation and internal quotation marks omitted).

When asserting an ineffective assistance of counsel claim that the state courts have rejected on the merits, the petitioner's burden is even heavier: "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (citations and internal quotation marks omitted); *see also Cullen*, 563 U.S. at 190 (review of *Strickland* claim under Section 2254(d) is "doubly deferential").

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105.

Regarding the second *Strickland* prong, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. "To establish *Strickland* prejudice a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper*, — U.S. —, 132 S. Ct. 1376, 1384 (2012) (citation and internal quotation marks omitted).

> This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable.

*Harrington*, 562 U.S. at 111-12 (citations and internal quotation marks omitted).   "[T]he *Strickland* prejudice prong may not be satisfied through speculation."  *Moore v. McKune*, 534 F. App'x 712, 724 (10th Cir. 2013).[6]

As the foregoing discussion makes clear, at this stage of the proceedings, it is not the Court's function to determine whether trial counsel's decision not to call an intoxication expert was ideal, or even professionally reasonable.  Rather, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Harrington*, 562 U.S. at 105.  For the reasons described below, the Court proposes to find that, at a minimum, the state courts reasonably held that "Petitioner's allegation of ineffective assistance of counsel is not supported by facts and that, as presented in his Writ for Habeas Corpus, the Petitioner cannot show conduct which was not that of a reasonable, competent attorney."  (Doc. 6-3 at 21-22.)

"[V]oluntary intoxication can negate the existence of the premeditation required for first degree murder."  *United States v. Sands*, 968 F.2d 1058, 1064 (10th Cir. 1992).  Under New Mexico law, "[a] finding of voluntary intoxication provides a defense to specific intent crimes where the intoxication is to such a degree as would negate the possibility of the necessary intent."  *New Mexico v. Garcia*, 2011-NMSC-003, ¶ 35, 246 P.3d 1057, 1068; *see, e.g., New Mexico v. Earley*, 2016 WL 2958068, at *9 (N.M. May 19, 2016) ("Defendant's . . . defense rested on his claim of voluntary intoxication and subsequent inability to form the specific intent required to sustain a first-degree murder conviction.").  Thus, in the present matter, the trial court instructed the jury that, to convict Petitioner of first-degree murder, it was required to find the prosecution had proved beyond a reasonable doubt that, *inter alia*, "[t]he [Petitioner] was not intoxicated from use of alcohol at the time the offense was committed to the extent of being

---

[6] Unpublished decisions are not binding precedent in the Tenth Circuit, but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

13

incapable of forming an intent to take away the life of another." (Doc. 6-2 at 99.) By its guilty verdict, the jury necessarily found beyond a reasonable doubt that Petitioner was able to form the deliberate intent to kill Mr. Hittson despite his consumption of alcohol on the night in question.

Petitioner claims that his trial counsel should have called an expert in "intoxication" or "toxicology" to testify that Petitioner was "too inebriated to form the requisite intent" for first-degree murder, and/or "to educate the jury as to the effects on the brain of consumption of large amounts of alcohol." (Doc. 1 at 8; Doc. 12 at 6-7.) Petitioner argues that the state court's rejection of this claim was "unreasonable," apparently, *inter alia*, because it was "cursory," "summary," "extremely brief," "a few sentences," and "conclusory." (Doc. 12 at 5-7.) However, as discussed above, this Court must defer to the state court's decision on the merits even if it is "summary," indeed, even if it sets forth no reasoning at all. *Harrington*, 562 U.S. at 98; *Cullen*, 563 U.S. at 187; *Aycox*, 196 F.3d at 1177.

Furthermore, the state court's summary rejection of Petitioner's ineffective assistance of counsel claim was, at the very least, not "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Petitioner's allegations in support of this claim, both in his state habeas pleadings and in his pleadings filed with this Court, have been wholly vague and speculative. He contends that jurors would have been "[]moved by the testimony of an expert that a person who had consumed the amount of alcohol that Petitioner . . . consumed could not have formed the *mens rea* required for first-degree murder." (Doc. 12 at 9.) Critically, however, he has never pointed to any evidence in the record, and never proffered any non-record evidence by affidavit or even by specific allegation, indicating how much alcohol he personally consumed, the existence of an actual,

qualified expert able and willing to testify on his behalf, or the substance of such an expert's proposed testimony.  (*See generally* Docs. 1, 12.)

Petitioner's conclusory and speculative allegations cannot demonstrate that the state court's rejection of his Sixth Amendment claim was unreasonable.  *Anderson*, 425 F.3d at 858-59.  "[T]he speculative witness is often a two-edged sword.  For as easily as one can speculate about favorable testimony, one can also speculate about unfavorable testimony."  *Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008).  Thus, in *Boyle*, the Tenth Circuit held that

> [a]lthough the . . . experts may have provided helpful testimony on direct examination, the admissions and qualifications elicited by prosecutors on cross examination may have been damaging.  *This is why the decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney.*

*Id.* at 1139 (emphasis added).

Similarly, here, while the testimony Petitioner envisions might conceivably have weakened the prosecution's case, the record is highly equivocal regarding whether a qualified expert would have been able and willing to give anything like it.  At most, the record shows that, on the night in question, Petitioner drank an unspecified amount of alcohol over a period of several hours before killing Mr. Hittson, and appeared "desperate and drunk" to a lay witness shortly afterward.  On that record, the Court can at least as easily imagine a toxicology expert giving testimony helpful to the prosecution, as testimony helpful to the defense, particularly on cross-examination.  "An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense."  *Harrington*, 562 U.S. at 108.  As such, it was legally and factually reasonable for the state court to hold that counsel's decision not to call a toxicology expert was a strategic decision falling within the wide range of reasonable professional assistance.  *Strickland*, 466 U.S. at 689; *see Harrington*, 562 U.S. at 109 ("There is

a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect.").

Other courts have held in analogous circumstances that counsel's failure to call an expert to testify regarding voluntary intoxication at a first-degree murder trial was professionally reasonable. Thus, the Tenth Circuit in *Knapp v. Janecka* held that the state court's rejection of the petitioner's ineffective assistance of counsel claim was legally and factually reasonable, despite trial counsel's failure to "call an expert witness . . . stating that [the petitioner] was intoxicated" at his first-degree murder trial. 337 F. App'x 766, 770 (10th Cir. 2009). The *Knapp* court reasoned that trial counsel's

> failure to call an expert witness . . . was neither deficient nor prejudicial. It is unclear how additional testimony from an expert witness stating that [the petitioner] was intoxicated would benefit him, as both parties stipulated that [the petitioner] had an extensive history of substance abuse . . . and the jury was informed that he had been drinking. . . . [C]ounsel may disserve the interests of his client by attempting a useless charade. [The petitioner's] counsel may well have thought that expert testimony was exactly that. This Court is not in the position to second-guess strategic trial decisions.

*Id.*; *see also Grayson v. Thompson*, 257 F.3d 1194, 1221-22 (11th Cir. 2001) (counsel's failure to "gather and present a defense expert regarding intoxication and alcoholism and their effects on an individual's ability to appreciate and understand the consequences of his actions" at capital murder trial was reasonable); *Houchin v. Zavaras*, 919 F. Supp. 1480, 1492-93 (D. Colo. 1996) (counsel's failure to retain expert toxicologist to testify about petitioner's blood alcohol level at first-degree murder trial was reasonable); *cf. Harrington*, 562 U.S. at 96, 106-09 (state court reasonably determined that counsel's failure to present expert testimony on serology, pathology, and blood spatter patterns was not ineffective assistance of counsel). For these reasons, as a matter of law, the state courts reasonably determined that Petitioner's trial counsel's performance

16

fell within the wide range of reasonable professional assistance, despite his failure to call an expert witness to testify regarding voluntary intoxication. *Strickland*, 466 U.S. at 689.

For similar reasons, the state courts acted reasonably in determining that trial counsel's failure to call an intoxication expert did not prejudice Petitioner's defense. (Doc. 6-3 at 21-22); *Strickland*, 466 U.S. at 691-92. New Mexico law does not require expert testimony "regarding the effect of intoxication upon [a] defendant's ability to form a deliberate intent to kill . . . because, of course, it is well recognized that laymen are capable of assessing the effects of intoxication as a matter within their common knowledge and experience." *New Mexico v. Privett*, 1986-NMSC-025, ¶ 20, 717 P.2d 55, 58. Again, it is true that if Petitioner had presented expert testimony that he was too intoxicated to premeditate, or even that a person with his physical characteristics, who had drunk as much alcohol as he drank, was too intoxicated to premeditate, it conceivably might—or might not—have helped his case. *Earley*, 2016 WL 2958068, at *11. However, as discussed above, the existence of a qualified expert able and willing to testify on Petitioner's behalf, the substance of his or her anticipated testimony, and even the amount of alcohol Petitioner actually consumed, have been and remain entirely vague and speculative.

Based on the present record, a toxicologist's testimony, particularly on cross-examination, could easily have been harmful to Petitioner's defense. Indeed, this risk seems, if anything, more likely than not in light of the overwhelming evidence that Petitioner was sober enough to engage in a number of deliberate acts, such as faking a drug deal while driving a truck, striking Mr. Hittson over the head with a cinder block four times, taking Mr. Hittson's wallet from his person, arranging for Mr. Perales to bring his personal vehicle from Roswell to Clovis, and returning to Mr. Hittson's body with a crowbar to "make sure [Mr. Hittson] was dead."

(Doc. 6-2 at 60-62, 104); *see Jackson v. Virginia*, 443 U.S. 307, 325 (1979) ("The petitioner's calculated behavior both before and after the killing demonstrated that he was fully capable of committing premeditated murder.").   In short, as a matter of law, Petitioner cannot show a reasonable probability that the vague and speculative testimony of a hypothetical toxicologist would have produced a different result at trial.

Other courts have reached the same conclusion in similar cases.  Thus, for example, in *Graves v. Ault*, the court found no reasonable probability that the result of the petitioner's first-degree murder trial would have been different "had trial counsel secured an expert" to testify regarding voluntary intoxication, where, "at best, any expert would be testifying about the hypothetical effects of [petitioner's] estimated alcohol level."  614 F.3d 501, 506 (8th Cir. 2010); *see also Rosales v. Milyard*, 541 F. App'x 874, 883-84 (10th Cir. 2013) (trial counsel's failure to present expert testimony regarding petitioner's intoxication at first-degree murder trial did not prejudice defense); *Fears v. Bagley*, 462 F. App'x 565, 574-75 (6th Cir. 2012) (same); *Heaton v. Nix*, 924 F.2d 130, 133 (8th Cir. 1991) (no reasonable probability that result of trial would have been different had trial counsel called two experts to testify "on the combined effects of alcohol and drugs on mental functioning" to negate petitioner's ability to form the requisite intent).  For all of the above reasons, the Court proposes to find that, as a matter of law, Petitioner has failed to show that the state courts' rejection of his Sixth Amendment claim on the merits was contrary to, or an unreasonable application of, clearly established federal law, nor that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The Court therefore recommends that Ground One of the Petition be denied.

**B.      The state courts reasonably determined that sufficient evidence supported Petitioner's kidnapping conviction.**

Petitioner next claims that insufficient evidence supported his kidnapping conviction pursuant to *New Mexico v. Trujillo*, 2012-NMCA-112, 289 P.3d 238, and that the conviction therefore violated the Fourteenth Amendment to the United States Constitution.  (Doc. 1 at 10-12; Doc. 12 at 12-16 (citing *In re Winship*, 397 U.S. 358, 361 (1970).)  In support of this claim, Petitioner focuses, not on the particulars of the *Trujillo* decision's scholarly analysis, but on the factual argument that, although Petitioner deceived Mr. Hittson, he did not restrain Mr. Hittson by that deception, because their association was voluntary, and Petitioner let him out of the company truck at his request.  (Doc. 12 at 12-16.)  In so arguing, Petitioner attempts to restrict New Mexico's definition of kidnapping well beyond the *Trujillo* decision's effect.

As the state district court in this matter observed, *Trujillo* held that "the Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime."  (Doc. 6-3 at 22); *New Mexico v. Thomas*, 2016-NMSC-024, ¶ 43, — P.3d —.  Thus, if Petitioner had been convicted of kidnapping on the basis of, for example, evidence that he grabbed Mr. Hittson before striking him with a cinder block, or moved his body a few feet between blows, *Trujillo* would clearly bar the conviction.  *See, e.g.*, *Thomas*, 2016-NMSC-024, ¶ 44, — P.3d at — (finding insufficient evidence to support kidnapping conviction where "[a]ny restraint . . . occurred during the commission of one continuous attack that ended in murder").  However, such was clearly not the basis of Petitioner's conviction.  Rather, both on direct appeal and in state habeas proceedings, the state courts held that Petitioner's conviction was supported by evidence of kidnapping by deception.  (Doc. 6-2 at 101-02.)

Under New Mexico law, kidnapping is, *inter alia*, "the unlawful taking, restraining, transporting or confining . . . of a person, *by . . . deception*, with intent . . . to inflict death [or]

physical injury . . . on the victim." N.M. Stat. Ann. § 30-4-1 (emphasis added). "[K]idnapping by deception can occur when an association between a victim and a defendant begins voluntarily but the defendant's actual purpose is other than the reason the victim voluntarily associated with the defendant." *New Mexico v. Marquez*, 2015 WL 1291651, at *4 (N.M. Mar. 23, 2015) (citation and internal quotation marks omitted); *see also New Mexico v. Soleto*, 2013-NMCA-028, ¶ 30, 296 P.3d 1232, 1242-43 ("Kidnapping may occur once the victim's physical association with the defendant is no longer voluntary.") (citation and internal quotation marks omitted). Thus, in *New Mexico v. Jacobs*, the New Mexico Supreme Court held that "the jury could have found that [the victim] was restrained by deception when Defendant changed the intended destination of the ride" he was giving the victim "from [her] home to [a] remote location." 2000-NMSC-026, ¶ 25, 10 P.3d 127, 137.

As the New Mexico Supreme Court observed, here, the evidence showed that Petitioner was taking Mr. Hittson back to his vehicle at Webb's Watering Hole when Mr. Hittson asked him if he knew where Mr. Hittson could get some marijuana and cocaine. (Doc. 6-2 at 60.) Then, after ascertaining that Mr. Hittson had about $400 in cash on his person, Petitioner "pretended to place a few calls looking for drugs, and drove in the direction of the dairies." (*Id.*) The state courts reasonably determined that this evidence was sufficient to support a finding that Petitioner unlawfully transported Mr. Hittson by deception with the intent to inflict death or physical injury on him. In particular, it was reasonable to determine that this evidence was sufficient to support a finding that, although Mr. Hittson's association with Petitioner began voluntarily, the voluntary association ended, and Mr. Hittson was "restrained by deception[,]

when [Petitioner] changed the intended destination of the ride" he was giving Mr. Hittson from Mr. Hittson's vehicle to the dairies.[7]  *Jacobs*, 200-NMSC-026, ¶ 25, 10 P.3d at 137.

Certainly, Petitioner's conduct in faking a drug deal and driving Mr. Hittson toward the dairies was not "merely incidental to another crime" within the meaning of *Trujillo*, 2012-NMCA-112, ¶ 39, 289 P.3d at 250.  (Doc. 6-3 at 22.)  The *Trujillo* decision suggested, for example, that conduct is not incidental to another crime when it "makes the other crime substantially easier of commission or substantially lessens the risk of detection."  2012-NMCA-112, ¶ 37, 289 P.3d at 250.  Here, the evidence amply supports a finding that Petitioner's driving Mr. Hittson out of town, rather than to Mr. Hittson's vehicle, made the armed robbery and murder of Mr. Hittson substantially easier of commission, and substantially lessened the risk that these crimes would be detected.  For all of the above reasons, the Court proposes to find that, as a matter of law, Petitioner has failed to show that the state courts' rejection of his Fourteenth Amendment claim was contrary to, or an unreasonable application of, clearly established federal law, nor that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The Court therefore recommends that Ground Two of the Petition be denied.

---

[7] Logically, the kidnapping ended—but was not, as Petitioner suggests, somehow negated—when Petitioner, having tricked Mr. Hittson into accompanying him "outside of town on a [wintry] night," let Mr. Hittson out of the truck at his request.  (Doc. 1 at 11.)

**V.    CONCLUSION**

For the forgoing reasons, Petitioner has failed to state any viable claims for relief under 28 U.S.C. § 2254.  The undersigned therefore RECOMMENDS that his Petition be DISMISSED WITH PREJUDICE.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**